Miles W. BOEKELOO, Glea A. Boekeloo, Arthur S. Huey, Helen M. Huey, Stanley M. Hammond, Marjorie L. Hammond, Majel Chance Obata and Admiral Tromp Associates, Inc., on behalf of themselves and all others similarly situated, Appellants,

v.

Donald Paul HODEL, Secretary of the Interior, and the United States of America, Appellees.

Appeal No. 87–1020.

United States Court of Appeals, Federal Circuit.

Aug. 26, 1987.

---

Arthur C. Spalding, Rhoades, McKee & Boer, Grand Rapids, Mich., argued for appellants. With him on the brief was Michael T. Small.

Sarah P. Robinson, Dept. of Justice, Washington, D.C., argued for appellees. With her on the brief were Myles E. Flint, Acting Asst. Atty. Gen., John A. Smietanka, Donald Daniels, Asst. U.S. Attys., Grand Rapids, Mich., and Martin W. Matzen. Also on the brief was Albert V. Witham, Office of the Regional Solicitor, Dept. of the Interior, Denver, Colo., of counsel.

Before NIES, Circuit Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

NIES, Circuit Judge.

Appellants Miles W. Boekeloo, et al. (collectively "claimants") appeal from the final judgment of the United States District Court for the Western District of Michigan, Southern Division, No. G80–754 CA (January 15, 1986), finding that the United States complied with the requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4653 (1982) (the Policies Act), and declaring that appellants have no claim under the Act for additional funds from the United States as reimbursement for real property taxes. We affirm.

I

Under the Policies Act, federal agencies are directed to reimburse former property owners whose property is acquired by the United States for certain necessary expenses incurred by the property owner, including real property taxes allocable to the period after title to the property vested in the United States. 42 U.S.C. § 4653(3) (1982). Claimants are owners of property acquired by the United States through condemnation or purchase to create the Sleep-

ing Bear Dunes National Lakeshore in the State of Michigan.[1] In a class action declaratory judgment suit, claimants assert that the United States misinterpreted the Policies Act causing them to receive less than the amount of their entitlement with respect to such taxes. Claimants sought a judicial determination of the proper method of allocating and prorating Michigan real property taxes under the Policies Act.

The relevant facts, as found by the district court, are not in dispute. Shortly after Congress passed the Sleeping Bear Dunes National Lakeshore Act, 16 U.S.C. § 460x *et seq.* (1982), authorizing the creation of the Sleeping Bear Dunes National Lakeshore in Benzie and Leelanau Counties, Michigan, representatives of the United States Department of Interior began acquiring land within the Lakeshore boundaries. To acquire the land the United States had to obtain title to the property free from any encumbrances related to unpaid property taxes. Therefore, it was necessary to determine how Michigan assessed, levied, and collected property taxes.

Michigan real property taxes are assessed and levied on a calendar year basis with the tax "debt" arising as of December 31 of the preceding year, i.e., the "tax day"; the amount is determined during the ensuing months; and a bill is issued on December 1 of that year, i.e., the "levy date." Thus, a bill issued December 1, 1978, for example, covers the period January 1, 1978, to December 31, 1978. A lien attaches to the property as of December 1, 1978, which continues until payment of the taxes. Mich.Comp.Laws § 211.40 (1979) (Mich.Stat.Ann. § 7.81 (Callaghan 1984)). The United States takes title to property subject to any liens on the property which exist on the date of transfer. *United States v. Michigan*, 346 F.Supp. 1277 (1972) (*Michigan I*), *rev'd on reconsideration*, 429 F.Supp. 8, 10–11 (E.D.Mich.1977) (*Michigan II*).

In view of the manner in which Michigan property taxes were assessed, levied, and collected, the United States established procedures to ensure payment of the tax bill that issued December 1 of the year in which it obtained title to each property. Whether property was acquired by sale or by condemnation, the later issued tax bill was paid out of funds withheld from the amount due the former owner. That tax bill was paid in *full* from such funds, either upon order of the condemnation court or by the Chicago Title Insurance Company, escrow agent, in the case of negotiated purchase.[2]

The Policies Act provides:

**Expenses incidental to transfer of title to United States**

The head of a Federal agency, as soon as practicable after the date of payment of the purchase price or the date of deposit in court of funds to satisfy the award of compensation in a condemnation proceeding to acquire real property, whichever is the earlier, shall reimburse the owner, to the extent the head of such agency deems fair and reasonable, for expenses he necessarily incurred for—

(1) recording fees, transfer taxes, and similar expenses incidental to conveying such real property to the United States;

(2) penalty costs for prepayment of any preexisting recorded mortgage entered into in good faith encumbering such real property; and

(3) the pro rata portion of real property taxes paid which are allocable to a period subsequent to the date of vesting title in the United States, or the effective date of possession of such real property by the United States, whichever is the earlier.

42 U.S.C. § 4653 (1982).

In accordance with its interpretation of the above statute, the Department of Inte-

---

**1.** Although the district court and the parties refer to this case as involving owners of property acquired or in the process of being acquired, for convenience, we refer only to the former class of property owners.

**2.** We express no opinion on whether the United States was or is entitled to a partial refund of

these taxes. Suffice here to say that reimbursement to a property owner under the Policies Act is not directly tied to the government's immunity and that the local tax authorities issued tax bills in the full amount for the year despite the transfer to the United States. That full amount is, thus, the outstanding "debt."

rior completed an application for reimbursement of taxes to the former owner, computing a pro rata amount to be reimbursed for the vesting year, and sent it to each property owner for his or her signature. Upon receipt and approval of the signed application, Interior sent a check to each property owner for the amount indicated on the application.

Several former owners (apparently all condemnees) did not sign and return the application for reimbursement as prepared by Interior. They prepared and filed applications seeking reimbursement of *all* of the *vesting* year tax and a *portion* of the *preceding* year's tax on the ground that the Policies Act required those amounts to be "allocated" to the United States. Their claims were denied by the land acquisition officer in charge of the Sleeping Bear project and were denied again on appeal to the Office of Hearings and Appeals of the Department of Interior. Typical of the agency's ruling in these appeals is the following:

> The owner is to be reimbursed for actual taxes allocable to the acquired lands for the period specified.

Upon careful consideration of the record, including the showing submitted on appeal, it is concluded that the reimbursement of $21.02, determined by the Land Acquisition Officer as allowable under section [4653] of the Act, *supra*, for the period of 42 days after the vesting of title to the property in the United States, is fair and reasonable in this case. The court, in ordering the 1978 taxes [the vesting year] to be paid out of the condemnation award, determined that payment of such taxes was the obligation of the condemnees. This Office has no authority to modify the court's order from which no appeal appears to have been taken. Although under Michigan statutes there would be no lien on the property for unpaid taxes for the calendar year 1978 until such taxes became due and payable on December 1, 1978, the tax status and tax liability for the lands

had been determined as of the tax day, December 31, 1977, for the ensuing 12–month period. The claimants, having had the use and enjoyment of the property to and including November 20, 1978, were properly found to be entitled under the Relocation Act to reimbursement only for the pro rata portion of the 1978 taxes allocable to the remaining 42 days of the calendar year 1978.[3]

Claimants then filed a declaratory judgment action to obtain judicial review of the agency's decision. Claimants asserted that Michigan law gave them a right to reimbursement under the Policies Act for all taxes paid in the vesting year (e.g., in the above instance, 1978) and for a portion of the prior year's tax bill (e.g., 1977). The district court rejected claimants' arguments that Michigan law mandated reimbursement of an additional amount of taxes and found that the United States had complied with the requirements of the Policies Act. Upon appeal to the Sixth Circuit, that court transferred the appeal here. The Federal Circuit has jurisdiction under 28 U.S.C. § 1295(a)(2) (1982), the claims being Little Tucker Act claims under 28 U.S.C. § 1346(a)(2) (1982).

## II

The question presented for review is whether the Policies Act requires "allocation" to the United States of (1) a portion of taxes which became due and payable the December 1 *preceding* the year in which title to the properties vested in the United States ("preceding year" taxes) and (2) the full amount of taxes which became due and payable the December 1 *following* the date title vested in the United States ("vesting year" taxes). The question is one of statutory interpretation which we approach as a matter of law.

## III

Apparently claimants' original theory underlying the entirety of their claims was

---

**3.** In some instances, reimbursement was requested *before* the vesting year tax bill was paid. In those cases, the agency's ruling stated that

the condemnation court *would* determine liability for the tax. Apparently, no claimant presented the issue to the condemnation court.

that Michigan real property taxes were paid in advance. Under that view, taxes levied, for example, on December 1, 1977, would be attributable to the period from December 1, 1977, to November 30, 1978, and taxes levied December 1, 1978, to the following twelve months. Thus, if the United States took title on July 1, 1978, the 1977 tax bill would have partially covered the period of its ownership. That theory proved to be untenable, as a matter of Michigan law, and the district court opinion states that claimants "conceded in their closing arguments [that] real property taxes in Michigan are assessed, levied and collected on a calendar year basis with the tax bill for each year issued on December 1st of that year." Slip op. at 9. Thus, the December 1, 1977, and the December 1, 1978, tax bills apply to calendar years 1977 and 1978, respectively. That construction of Michigan tax law is supported by all authorities and, in any event, is technically not challenged on appeal.

A

Claimants argue that allocation of Michigan real property taxes under the Policies Act depends upon Michigan law and that the agency and the district court erroneously interpreted Michigan law. In particular, Section 2 of Michigan's General Property Tax Act, Mich.Comp.Laws § 211.2 (1979) (Mich.Stat.Ann. § 7.2 (Callaghan 1984)), provides for apportionment of the preceding year's taxes and, per claimants, a portion of such taxes are, therefore, "allocable" to the United States under the Policies Act. Further, they assert, because the claimants were not owners of the property when the vesting year tax bill issued and the property of the United States is exempt from local taxation—an exemption recognized in section 7, Mich.Comp.Laws § 211.7 (1979) (Mich.Stat.Ann. § 7.7 (Callaghan 1984))—the vesting year taxes did not have to be paid by anyone. Therefore, the argument is that funds should not have been withheld from condemnation awards and purchase prices for the payment of taxes which were not billed until after title vested in the United States and, thus, had not and could not become a lien against the property. See Michigan II, 429 F.Supp. at 10–11. Such wrongfully paid taxes in claimants' view are also "allocable" to the United States. Thus, per claimants, under the Policies Act and Michigan law, part of the preceding year's tax bill and all of the vesting year's tax bill are reimbursable.

We reject, as did the district court, the argument that the manner in which Michigan chooses to prorate taxes when state agencies acquire property is controlling under the Policies Act. However, before turning to that issue, we will address the argument that the tax bill for the vesting year did not have to be paid by anyone because no lien could attach to the property after title vested in the government.

The government first asserts that by challenging payment of the vesting year taxes in this proceeding, claimants are collaterally attacking the order of the condemnation court which directed payment of the vesting year tax bill from the condemnation award after finding that "the said Treasurer [e.g., of Lake Township] is entitled to receive said payment." Also, the government maintains that the purchase contracts required conveyance by the sellers "free and clear of all liens and encumbrances," not simply liens, and that, although a subsequently imposed lien for taxes could not be enforced against the United States, the outstanding tax debt constituted an encumbrance. An amicus brief filed below by the State of Michigan supports this argument. Further, per the government, it was contemplated by all parties, including those in the negotiated sales, that the vesting year taxes would be paid. Claimants, on the other hand, dispute each of these propositions.

The district court resolved this conundrum on the basis of the "mechanism" of the Michigan taxation system. As indicated previously, the taxation of real property begins with "tax day" on December 31, with the determination of what property is subject to taxation by a particular jurisdiction for the subsequent year. Mich. Comp.Laws § 211.2 (1979) (Mich.Stat.Ann. § 7.2 (Callaghan 1984)). During the following March, the assessment made by the

local official is subject to an examination by the local board of review, Mich.Comp. Laws § 211.29 (1979) (Mich.Stat.Ann. § 7.29 (Callaghan 1984)), and concluded by endorsement upon the assessment roll. Mich.Comp.Laws § 211.30 (1979) (Mich. Stat.Ann. § 7.30 (Callaghan 1984)). During April, each county equalizes the assessment rolls of the local governmental units and in May the state tax commission equalizes the assessment rolls of the counties in the state. Mich.Comp.Laws §§ 211.34, 209.1 *et seq.* (1979) (Mich.Stat.Ann. §§ 7.52, 7.601 *et seq.* (Callaghan 1984)). Ultimately a tax roll is prepared and delivered to the local treasurer on or before the first day of December and the treasurer then begins to collect such taxes. Taxes become due and payable in the counties on December 1 of each year and become a lien on the property on the same date. Mich.Comp. Laws § 211.40 (1979) (Mich.Stat.Ann. § 7.81 (Callaghan 1984)). However, the entire amount of taxes assessed on December 1 retroactively is a "debt due" to the jurisdiction *from the property owner* as of the *preceding* December 31 "tax day." Thus, in rejecting claimants' position, the district court distinguished between the "debt" for taxes and the "lien." The court noted that the taxes were a debt due to the taxing authorities before the United States acquired the property (i.e., on the preceding December 31 tax day) even though no lien arose until afterwards (i.e., on the following December 1). Coupling that concept with the Policies Act requirement for an apportioned reimbursement of taxes allocable to the period *after* the United States took title, the district court concluded that

the United States complied with the requirements of that Act by prorating the vesting year taxes.

■ In support of the district court's decision, the government points out that the tax "debt" (i.e., in its entirety) is due from the prior owner and may be collected by seizure and sale of his personal property. Mich.Comp.Laws § 211.47 (1979) (Mich.Stat.Ann. § 7.91 (Callaghan 1984)). Material submitted by counsel for claimants at this court's request at oral argument is in accord with this statement of Michigan law. *See* 1929–30 Mich. Att'y Gen. Biennial Rep. 426.[4] Thus, we must accept that, to this extent, the taxes constituted the former owner's debt, and claimants' argument that the claimants had no liability at all for the vesting year taxes is wrong as a matter of law. The vesting year bill was a legal obligation of the former owner, albeit with limited enforceability. The government's immunity from Michigan taxation could not negate the tax bill itself or the liability of the former owner to the extent provided under Michigan law.[5]

■ Additionally, the Policies Act is clearly not designed as a vehicle for determining whether or not particular taxes had to be paid from a just compensation award. As correctly stated in the agency's decision on the various claims, that decision rested with the condemnation court.[6] Similarly, while it is debatable whether the sales contracts required payment of the vesting year's taxes by the property owner, that was a matter to be worked out prior to closing on purchased properties. Nothing

**4.** All authorities agree that the tax "debt" is not enforceable against a former property owner except as explicitly provided by statute. Michigan provides only for enforcement of real property taxes against the taxed property or the "debtor's" personal property.

**5.** Contrary to claimants' argument, the *Michigan II* decision does not address the issue of the former property owner's liability and, thus, simply has no pertinence to the issue at hand. That decision is, in any event, not binding precedent on the district court here nor on this court. The fact that *Michigan II* holds that the United States does not take property subject to an unenforceable lien against the government, 429 F.Supp. at

10–11, does not prevent the taxing authorities from recording the outstanding bill as a charge against the property as they said they would do if unpaid.

**6.** The cases cited by claimants where a condemnation court refused to deduct certain tax amounts from a just compensation award, *e.g.*, *People of Puerto Rico v. United States*, 131 F.2d 151 (1st Cir.1942), are not pertinent here. What result the condemnation court would have reached had the matter been presented to it by condemnees here is not within the scope of this decision.

compelled the sellers to close if they disagreed with the final terms. Accordingly, claimants' argument that payment of the tax bills was "without the approval or consent of the class members" and that "the class members' only recourse was to seek reimbursement of the taxes under the Policies Act" is patently without substance. The above avenues were available to class members to resolve the question of whether the vesting year taxes should have been paid.

Although the parties engage in lengthy debates in their briefs over the construction of the purchase agreements and the res judicata effect of the condemnation judgment, we need resolve none of these disputes in view of the structure of the Policies Act itself. Claimants assert that because the vesting year taxes should not have been paid at all, such taxes must be "allocated" to the United States under the Policies Act. Claimants have it backwards. The question of "allocation" to the United States is reached under the Policies Act only with respect to expenses the property owner "necessarily incurred." Hence, that requirement is a condition precedent to proration.[7] If, as claimants assert, no tax was owed for the vesting year, the tax was not an expense "necessarily incurred." If the expense was not necessarily incurred, then the Policies Act provides no legal basis for the claims asserted here. Claims for refunds of taxes which the property owners assert should not have been paid at all lie elsewhere.

■ Under the Michigan tax system, the entire vesting year tax bill is an unavoidable obligation of the former owner and meets the "necessarily incurred" requirement. In any event, the government does not and is in no position to challenge that the taxes were necessarily incurred. Thus, after payment, the agency properly reimbursed former owners for what it deemed to be a "fair" share of such taxes reasonably allocable to the period of government ownership. The only taxes allocable to a

period of the government's ownership under Michigan law are those levied in the year in which vesting occurred, and, thus, only vesting year taxes are conceivably proratable. If the vesting year taxes had not been paid in their entirety, claimants would have been entitled to nothing *under the Act*. However, because the total amount of the tax bill for the vesting year was an expense "necessarily incurred" by the former owner and was paid from his funds, the Policies Act gave an entitlement to a pro rata reimbursement of that expense.

## B

Claimants argue, nevertheless, that, because a decision on allocation under the Policies Act depends on Michigan tax law, the Policies Act must be deemed to incorporate all of Michigan tax law including the Michigan tax proration statutes. Thus, per claimants, they were not obliged to challenge payment of the vesting year taxes in the condemnation proceedings or to object to such item as an expense at closings because they were entitled, in any event, to reimbursement under the Michigan proration statutes for the entire amount of vesting year taxes and part of the preceding year taxes. Stated another way, assuming the preceding year and vesting year taxes are expenses "necessarily incurred" by the claimants, they are still entitled to reimbursement under the Policies Act.

Section 211.2 of Michigan's Tax Act governs proration of real property taxes for property acquired for public use by state agencies by either purchase or condemnation. That statute specifies that the former property owner is responsible for the portion of taxes from the preceding levy date to the day title passes (i.e., from the preceding December 1 to the vesting day). The state agency is responsible for the remainder of such taxes and for the taxes levied on and after the date title passes and before the property is removed from the

---

**7.** We understand the agency ruling to be saying the same thing in speaking of proration of "ac-    tual taxes."

rolls. Thus, state agencies are entirely responsible for the taxes levied on December 1 of the vesting year and partially responsible for taxes levied on December 1 in the preceding year. As claimants suggest, property taxes are treated as if paid in advance from December 1 of each year under this statute. Although the statute applies only to state agencies, claimants would superimpose this proration system on acquisitions by the federal government with the modification that the federal government would be immune from the obligations imposed on state agencies. Alternatively, claimants suggest that the Michigan proration statute applicable to conveyances between private parties be followed as a matter of fairness.

The district court gave short shrift to those arguments, and we agree they are meritless. Michigan could not *require* the United States to reimburse a former owner for any portion of any tax bill. Thus, the issue comes down to whether Congress intended that the state proration statutes be followed. Because there is no legislative history with respect to proration, we are left simply with the words of the statute which do not specify that state law with respect to proration controls. On the contrary, the statute is phrased to give the head of an agency discretionary authority. Claimants urge that we, nevertheless, infer that Congress intended state proration statutes to apply. However, it simply makes no sense to us to construe the Policies Act to require reimbursement of taxes during any period in which the property owner enjoyed ownership of the property. Without more explicit direction for the disbursement of public funds, we will not imply such congressional largesse.

### IV

In view of the Michigan system for assessment and liability for taxes, we conclude that the agency's decision limiting reimbursement to a portion of the vesting year taxes paid by or on behalf of the property owners complied with the Policies Act's requirement for reimbursement of expenses "necessarily incurred" by the property owner which were "allocable to a period subsequent to the date of vesting title in the United States." 42 U.S.C. § 4653 (1982). Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

