**In the Matter of GRAND RAPIDS PACKAGING CORPORATION, Debtor.**

**James D. ROBBINS, Trustee, Plaintiff,**

**v.**

**NATIONAL ACCEPTANCE COMPANY OF AMERICA, Old Kent Bank & Trust Company, Schoolcraft Township, S & B Realty Company, Defendants.**

**Bankruptcy No. HG 82 03346.**
**Adv. No. 83–1343.**

United States Bankruptcy Court, W.D. Michigan.

Sept. 25, 1985.

Varnum, Riddering, Schmidt & Howlett, Jeffrey R. Hughes, Grand Rapids, Mich., for trustee.

Warner, Norcross & Judd, Richard A. Bandstra, F. William Mc Kee, Grand Rapids, Mich., for Old Kent Bank & Trust Co.

Russell B. Baugh, Kalamazoo, Mich., for Schoolcraft Tp.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

## PERSONAL PROPERTY TAX LIENS AND PROPERTY OF THE ESTATE

By this adversary proceeding the Trustee, James Robbins, seeks to establish that Schoolcraft Township has an enforceable, perfected lien superior in right to the lien claimed by Old Kent Bank and Trust Company.[1] Once the Trustee has established the superiority of the Schoolcraft tax lien over the Bank's lien he then seeks to in turn subordinate the tax lien to the estate's administrative expenses as provided for in 11 U.S.C. § 724(b). The Trustee has brought this motion for summary judgment, based upon a stipulation of facts all the parties have agreed to. The following account of the facts of this case is taken from that stipulation.

## FACTS

Among the debtor's assets before coming under the protection of the Bankruptcy Court were machinery and equipment located at the Grand Rapids Packaging plant in Schoolcraft Township, Michigan. On December 31, 1981, Grand Rapids Packaging valued its personalty. That valuation was submitted to the Township as the basis for the calculation of the debtor's 1982 personal property tax bill. On October 21, 1982, the creditors of Grand Rapids Packaging filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code.

The order for relief was entered by the Bankruptcy Court on December 1, 1982.[2] The Township mailed the tax bill for $23,782.80 to the debtor on December 1, 1982. Michigan law sets December 1st as the date the Township's lien arose for payment of those personal property taxes. The Trustee, pursuant to Court order, sold the debtor's personalty on January 25, 1983. Mr. Robbins received $149,279.09, net of

auctioneer's commission. National Acceptance Corporation had claimed a first position security interest in those proceeds before it was dismissed. That dismissal elevated Old Kent's claim for second position to one for first position. S & B Realty claims a second position now, arising from its right to subrogate Old Kent's claim as a result of a payment by S & B to Old Kent on a debt owed by the debtor and guaranteed by S & B Realty. The Township claims a lien superior to all these for the personal property taxes due to it.

## DISCUSSION

In order for § 724(b) to be applicable, the personalty must have been subject to an unavoidable tax lien. To determine whether the personalty was subject to such a lien the Court must consider the personal property tax lien provisions of Michigan law, found at M.S.A. § 7.81 [M.C.L.A. § 211.40], and the interaction of that statute with the Bankruptcy Code section governing the creation and scope of the bankruptcy estate, 11 U.S.C. § 541.

The Michigan personal property tax lien is created by M.S.A. § 7.81 [M.C.L.A. § 211.40], the relevant portions of which follow:

> Notwithstanding any provisions in the charter of any city or village to the contrary, all taxes shall become a debt due to the township, city, village and county from the owner ... on the tax day provided for in ... this act, ... And all personal taxes hereafter levied or assessed shall also be a first lien, prior, superior and paramount, on all personal property of such persons so assessed from and after the first day of December in each year for state, county, village or township taxes or upon such day as may be heretofore or hereafter provided by charter of a city or village, and so remain until paid, which said tax liens shall take precedence over all other claims, encumbrances and liens upon said personal

---

1. As to the other two defendants, National Acceptance Company of America was dismissed from the proceeding and S & B Realty did not choose to contest the case.

2. The stipulation of facts incorrectly gave this date as November 31, 1982.

property whatsoever, . . . and no transfer of personal property assessed for taxes thereon shall operate to divest or destroy such lien, except where such personal property is actually sold in the regular course of retail trade. The personal property taxes hereafter levied or assessed by any city or village shall be a first lien, prior, superior and paramount to any other claims, liens and encumbrances whatsoever upon the personal property assessed as herein provided, any provisions in the charter of such cities or villages to the contrary notwithstanding.[3]

Like many statutes, § 7.81 [M.C.L.A. § 211.40] is not so much a single act of one legislature but rather an accretion of amendments enacted at various times to adapt the law to then current problems. The Michigan legislature enacted the basic text of § 7.81 [M.C.L.A. § 211.40] in 1929 to replace an earlier version. In 1931 the Michigan Attorney General interpreted the 1929 version as allowing persons who purchase personal property before December 1st to take that property free and clear from any obligation to pay the taxes previously assessed on it. *1931–32 Biennial Report of the Michigan Attorney General,* pp. 106–109. The Legislature amended § 7.81 [M.C.L.A. § 211.40] in 1934. A comparison of the 1929 text given in that Attorney General's Opinion and the present text indicates that, among other things, the introductory clause, "Notwithstanding any provisions in the charter of any city or village to the contrary," and the entire last sentence were added after the Attorney General gave his opinion, probably in 1934. See History and Former Acts, M.S.A. § 7.81 [M.C.L.A. § 211.40].

The trustee argues that the last sentence was added in 1934 by the legislature to overrule the Attorney General. He reads § 7.81 [M.C.L.A. § 211.40] as creating two liens on December 1st, one on all the property the taxpayer owns as of that date, created by the penultimate sentence cited above from § 7.81 [M.C.L.A. § 211.40], and a second lien on all the property that the

taxpayer owned on the previous assessment day in the hands of whoever may own it, created by the last sentence. This second lien would arise against the property in the hands of a pre-lien bona fide purchaser, or in the hands of a trustee. The trustee admits that the last sentence specifically mentions the tax liens of cities and villages, but not townships. He argues that it is irrational to confer upon cities and villages a second lien power and deny it to townships and concludes from that that the omission must therefore have been inadvertent. The trustee urges this Court to supply the mistakenly neglected term in interpreting the statute. Transcript at 19–22.

Despite the fact that § 7.81 [M.C.L.A. § 211.40] has generated a considerable amount caselaw since its amendment in 1934 neither the Trustee nor the Court has found a single case which has held that § 7.81 [M.C.L.A. § 211.40] created two personal property tax liens. One court that has considered this section held in *In re Continental Credit Corporation,* 1 B.R. 680 (N.D.Ill.1979) that a bona fide purchaser before December 1st takes the personal property free from any tax lien for that year's taxes. Further, by its own terms the last sentence applies only to cities and villages. The legislature has amended this act three times since 1934; in 1941, 1949 and 1958, and has not seen fit to include townships in the last sentence of § 7.81 [M.C.L.A. § 211.40]. The absence of "townships" from the last sentence is far from an apparent omission. Indeed it is not an omission at all unless the last sentence creates a second lien that the legislature wanted to favor townships with but forgot to.

The last sentence of § 7.81 [M.C.L.A. § 211.40], however, does not create a second lien. Rather, as the summary of Former Acts indicates, the present law, unlike the 1929 amendment, provides "that personal property taxes assessed by a city or village should be a lien notwithstanding any provision in the charter of such city or village to the contrary." See History and

---

**3.** The tax day referred to in the first sentence is each December 31st, M.S.A. § 7.2 [M.C.L.A. § 211.2], the day on which Grand Rapids Packaging valued its personalty.

Former Acts, M.S.A. § 7.81 [M.C.L.A. § 211.40]. The entire section evidences an awareness of the possible interplay between the tax law and the charters of cities and villages. The section has also been amended since 1929 so that it now begins by proclaiming that all taxes become a debt due upon assessment on tax day, notwithstanding any provisions to the contrary in any city or village charter. Elsewhere the section provides that real or personal property taxes shall become a lien upon December 1st or on a day set by the city or village charter. The section ends by providing in the last sentence that the personal taxes levied by cities and villages shall be first liens despite any contrary statement in the charters of such cities and villages.[4] When the statute is looked at as a whole it is clear that the last sentence was meant to create a city and village personal property tax lien as provided above to the state, county, village and township, and to override contrary provisions in city and village charters.[5] The 1934 amendatory act indicates that the legislature believed Michigan was in a fiscal crisis; to preserve tax collection and public services the legislators apparently chose to override any charter provision that denied city and village tax liens a superior status. Townships would have been omitted because only cities and villages are permitted to have their own charters. M.S.A. §§ 5.1521 to 5.1527, 5.2242(15) [M.C.L.A. §§ 78.11 to 78.17, 123.-1015]. Townships do not have individual charters; one act of the legislature serves as the charter for all townships. M.S.A. § 5.46(1) [M.C.L.A. § 42.1].

■ The 1931 opinion of the Michigan Attorney General has not been overruled by the last sentence of § 7.81 [M.C.L.A. § 211.40]. Although that opinion is not binding upon this Court as an interpreta-

tion of § 7.81 [M.C.L.A. § 211.40], it is still a valid opinion. More importantly, the Michigan Legislature appears to have been content with this interpretation of § 7.81 [M.C.L.A. § 211.40] for over fifty years now. The interpretation of the Attorney General fosters the easy transferability of personal property, a goal endorsed by the Michigan Supreme Court in *Lucking v. Ballantyne*, 132 Mich. 584, 94 N.W. 8 (1903), and cited by the Attorney General. This Court also concurs with the analysis of the Attorney General's Opinion. The repetition in the present § 7.81 [M.C.L.A. § 211.40] of the phrase "all personal taxes shall be a lien on all personal property of such persons so assessed from and after the first day of December in each year," which is identical to the pre-1929 law, indicates the Legislature's intent not to reject the pre–1929 interpretation of Michigan law that one who purchased before December 1st took the personal property free from that year's tax lien. *Chippewa Hardware Company v. Atwood*, 127 Mich. 338, 86 N.W. 854 (1901). Section § 7.81 [M.C.L.A. § 211.40] does provide that "no transfer of personal property assessed for taxes thereon shall operate to divest or destroy such lien," except for a normal retail sale. As the Attorney General's Opinion reasoned, however, a sale before the December 1st creation of the lien would not violate this prohibition, for such a sale could not divest or destroy a lien that had not yet been created or vested. Section 7.81 [M.C.L.A. § 211.40] creates one personal property tax lien which vests on December 1st and which will not attach to any property conveyed before that date.

The question remains as to whether such a lien ever attached to the instant personal property. Section 541 of the Bankruptcy Code provides that the commencement of

---

4. Other sections of the Michigan tax laws also show the same awareness of possible contrary provision in city and village charters. See, e.g., M.S.A. §§ 7.2, 7.161 [M.C.L.A. §§ 211.2, 211.-107].

5. The fact that cities are mentioned in the last sentence, but not in the penultimate sentence, as having a personal property tax lien does give support to the Trustee's argument that this last

sentence creates a second lien. But the last sentence provides that the city personal property tax lien, like thee village, shall be "as herein provided," a reference to the terms of the preceding sentence. Otherwise, the penultimate sentence would give a township, county or the state one lien, the last sentence would give a city another lien, and both sentences together would give a village two liens.

an involuntary case under § 303 creates an estate comprised of all the debtor's legal or equitable interests in property as of the commencement of the case, with exceptions irrelevent here. The Bankruptcy Code makes no specific provision for continuing the case in the event of the debtor's death or insanity because "[o]nce the estate is created, no interests in property of the estate remain in the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 368, reprinted in 1978 U.S.CODE CONG. & AD NEWS 5787, 6324. It has been held that the filing of a voluntary petition under Chapter 7 by a cotenant effects a conveyance of the debtor cotenant's interest which severs the joint tenancy. *Feldman v. Panholzer (In re Panholzer)*, 36 B.R. 647 (D.Maryland, 1984); *In re Lambert*, 34 B.R. 41 (Colo. 1983). As the *Panholzer* court observed, "[a] comprehensive conveyance by the debtor to the Chapter 7 trustee takes place with the commencement of the proceeding and creation of the bankruptcy estate under § 541(a)."[6] 36 B.R. at 651.

■ This case was commenced on October 21, 1982, with the filing of the involuntary petition. 11 U.S.C. § 303(b). As of that date all the debtor's property became property of the estate. 11 U.S.C. § 541(a). Section 7.81 [M.C.L.A. § 211.40] provides that "all personal taxes shall also be a first lien … on all personal property of such persons so assessed from and after the first day of December in each year." The person assessed on December 31, 1981 was the debtor, so the lien which arose on December 1, 1982, arose against any property Grand Rapids Packaging owned on December 1, 1982. It did not arise upon the personal property eventually sold by the trustee, though, for that equipment and machinery was no longer property of the debtor as of October 21, 1982. On December 1, 1982, that property belonged to the Chapter 7 estate, a separate entity.

■ The analogous situation under state law is receivership and dissolution. Under M.S.A. § 27A.3510 [M.C.L.A. § 600.3510] in a corporate dissolution the permanent receiver is vested with all the property, real and personal, of the corporation to be dissolved and is to act as a trustee for the creditors and stockholders. The Michigan Supreme Court considered a case identical to the present case in *In re Dissolution of Ever Krisp Food Products Co.*, 307 Mich. 182, 11 N.W.2d 852 (1943). The circuit court issued a decree to dissolve the corporation and the permanent receiver became possessed of the property of the corporation on June 28, 1940, pursuant to M.S.A. § 27.2359 [M.C.L.A. § 640.6], the substantially identical predecessor of the current M.S.A. § 27A.3510 [M.C.L.A. § 600.3510]. The city of Detroit claimed personal property tax liens for three years' taxes against the property of the dissolved corporation. The city claimed that the liens had arisen, pursuant to the city charter, on July 15th of 1938, 1939, and 1940. The Michigan Supreme Court held that the 1938 and 1939 liens were specific and perfected liens upon the corporation's property and followed that property into the receiver's hands. The Court held that the taxes assessed December 31, 1939, which were to become a lien July 15, 1940, were a different matter, however, for

> In 1940, these taxes did not become a *lien* until July 15, 1940, and this was subsequent to the time (June 28, 1940) when the receiver became possessed of the property. The receiver did not take the property burdened with a city tax lien for the 1940 city taxes.

307 Mich. at 212, 11 N.W.2d 852 (emphasis in original). Therefore, § 7.81 [M.C.L.A. § 211.40] creates one personal property tax lien against the property owned on December 1st by the person assessed. If a petition for protection under the Bankruptcy Code has been filed in the interim between the assessment day and the lien day, then the estate created thereby will take the debtor's property free of any personal property tax lien that was not vested, specific and perfected as of the commencement of the bankruptcy case.

---

**6.** A more fortunate wording might have been that the conveyance is from the debtor to the Chapter 7 estate. See 11 U.S.C. § 541(a).

At first, this result might appear somewhat arbitrary and capricious. Yet there can be no doubt that it is the same result that would have transpired under Michigan law had the debtor sold or otherwise transferred the property before December 1, 1982, or had Old Kent Bank held a foreclosure sale of the property before that date.

This result might also appear to contradict 11 U.S.C. § 546(b) which allows the perfection of certain liens under "applicable law" to relate back pre-petition despite the automatic stay of § 362 and to thereby defeat the trustee, in order to protect "those whom state law protects by allowing them to perfect their liens as of an effective date that is earlier than the date of perfection." S.Rep. No. 989, 95th Cong., 2nd Sess. 86–87, reprinted in 1978 U.S. CODE CONG. & AD.NEWS 5787, 5872–5873. However, to hold that the tax lien here attached to the personal property would not only afford the state more protection than it has given itself, it would be to violate applicable state law. It would be to hold that a lien intended to apply only against property the debtor owns as of December 1st also applies to property he does not own. Such a result would be contrary to Michigan law. Further, perfection of the Michigan personal property tax lien does not relate back to any date either pre-or post-petition. The lien is both created and perfected as of and from December 1st of each year. M.S.A. § 7.81 [M.C. L.A. § 211.40]. More fundamentally, the § 362 automatic stay is not implicated in this case. It is true that § 362 stays the creation of liens against property owned by either the debtor or the estate. However, the question of whether the automatic stay precluded the creation of a lien against the debtor is not before the court, nor would the answer be relevant to this case.[7] The

question here is whether a lien attached to personal property owned by the estate. The Michigan statutes do not claim to create such a lien.[8] Therefore, there is no need to consider whether the automatic stay forestalled the creation of that lien.

CONCLUSION

The trustee has sought to establish that Schoolcraft Township had a superior personal property tax lien, and to then subordinate that lien to the estate's administrative expenses under § 724(b). Under Federal and State law the personal property in question was not subject to a personal property tax lien. As no lien attached to the property, there is no lien to subordinate and § 724(b) is inapplicable. Therefore, the Trustee's motion for summary judgment must be denied.

---

7. For this reason the Court need not address either *In re New England Carpet Company, Inc.,* 26 B.R. 934 (D.Ver.1983) or *Maryland National Bank v. Mayor of Baltimore (In the Matter of Maryland Glass Corporation),* 723 F.2d 1138, 11 B.C.D. 899 (4th Cir.1983), cases which the parties discussed extensively.

8. The Court would note that this opinion addresses only personal property tax liens. Although the parties argued by analogy from *United States v. Michigan,* 429 F.Supp. 8 (E.D.Mich. 1977), the Court does not express any opinion as to whether real and personal property tax liens operate along the same lines.