In re FEDERATED DEPARTMENT STORES, INC., A & S Galleria Real Estate, Inc., Debtor.

City of White Plains, N.Y., Plaintiff,

v.

A & S Galleria Real Estate, Inc. and its Successors or Assigns, Defendant.

Bankruptcy No. 1–90–00147.
Adversary No. 97–1155.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Jan. 5, 2000.

Todd S. Swatsler, Melanie S. Fahey, Columbus, OH, for Reorganized Debtor.

Richard M. Cieri, Cleveland, OH, for Reorganized Debtor.

John A. Schuh, Cincinnati, OH, for City of White Plains.

William T. Hayden, Cincinnati, OH, for Claims Reconciliation Committee.

Neal J. Weill, Cincinnati, OH, Asst. U.S. Trustee.

### DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BURTON PERLMAN, Bankruptcy Judge.

Defendant, debtor A & S Galleria Real Estate, Inc., filed a Chapter 11 case in this court, which was jointly administered with that of Federated Department Stores. Defendant owns real property located in White Plains, New York (the "subject property"). Defendant's bankruptcy case was filed on January 15, 1990. The case was administered and closed in June, 1996. On August 12, 1997, plaintiff here, the City of White Plains, New York, filed a motion for allowance of an administrative expense for the city and school taxes for the fiscal year 1990–91. The motion of the city was denied in this court, and that decision was affirmed by the District Court on September 13, 1999.

The City of White Plains, plaintiff herein, also filed this adversary proceeding. Plaintiff here seeks to have the court recognize that plaintiff has a lien on the subject property, on account of unpaid taxes for 1990–91. According to plaintiff, it acquired an interest in the property prepetition, which was subsequently perfected. Defendant has filed a cross-motion for

summary judgment. In it, defendant argues that plaintiff's lien interest was perfected only post-petition, and is therefore invalid as violative of § 362(a)(4). In response, plaintiff urges that perfection post-petition is permitted, notwithstanding the automatic stay of § 362(a)(4), by § 362(b)(3).

While the considerations relevant to decision on the issue of whether the City of White Plains was entitled to administrative expense as contended in its earlier motion are not here relevant, the facts to be considered here are in large part those recounted by the District Court in its decision of September 13, 1999:

> The State of New York sets March 1 of each year as the taxable status date for real property, unless the city or town has established a different date. N.Y. Real Prop. Tax Law § 302(1). By charter, White Plains has established January 1 as the taxable status date for real property: "Real property in the city shall be assessed according to its condition and ownership as of January first of each year." Charter § 74(b). According to White Plains, this provision means that the owner of the property on January 1 is liable for the taxes due for that year based on its January 1 status, even if after that date the owner sells the property or it is destroyed.
>
> Also on January 1 of each year, the assessor establishes a value for each parcel of property and enters it into a set of books known as the tentative assessment roll. Charter § 74(c). After the tentative assessment roll is established and published, property owners have an opportunity to make challenges to the values assessed. After any changes are made and certified, the final assessment role is filed with the city clerk by March 1. Charter § 74(h). By May 30 of each year, the city adopts a budget and levies a tax based on the taxable property which is sufficient to balance the budget. Charter §§ 65(B) and (D). One-half of the tax levied is

due on July 1 and the remainder is due on the following January 1. Charter § 84.

> School taxes are calculated based on the latest final assessment role of the city or town. N.Y. Real Prop. Tax Law § 1302(1). The taxable status date for the school tax is the taxable status date adopted by the city or town. *Id.* § 1302(3). After a school tax has been approved at a district meeting, the school authorities issue a levy, and a school tax roll is prepared and a warrant annexed for collection. *Id.* § 1306(1). The tax is payable in installments of one-half of the total amount of tax on the following July 31 and January 31.
>
> In the instant case, White Plains established its tentative assessment roll for the city property tax on January 1, 1990. On January 15, 1990, A & S Galleria filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On March 1, 1990, the final assessment roll was approved and filed with the city. On May 21, 1990, the Common Council of White Plains approved its budget for the fiscal year July 1, 1990 to June 30, 1991 and determined a tax rate to be applied to the final assessment roll. On June 18, 1990, the city school board approved a tax levy for the fiscal year July 1, 1990 to June 30, 1991 and the necessary school tax roll and warrant were prepared.

\* \* \* \* \* \*

For present purposes, the foregoing must be supplemented with reference to other provisions of applicable law. After the taxable status date passed, the city assessor published the assessment between January 3 and January 8, 1990. All complaints concerning assessments were to be heard before February 15, 1990. Charter § 74(d) and (e). A "correct and complete" assessment role, finalizing the value of property, was filed March 1, 1990. Charter § 74(h). The amount of real estate taxes to be levied were determined

when plaintiff passed its budget on May 21, 1990. Real estate taxes then became due and payable, one-half on July 1, 1990 and one-half on January 2, 1991. Real estate taxes did not become a lien until so due and payable. Charter § 84. A similar procedure applied to 1990 school taxes pursuant to New York Real Property Tax Law ("RPTL" § 1302). The school taxes became a lien when plaintiff's board of education on June 18, 1990 determined the amount of school·tax. RPTL § 1312. Regarding water charges, plaintiff's Charter provides that they are a lien from the date when water is furnished. Charter § 200. Plaintiff is unable to determine when defendant used the water as to which a lien is asserted.

Given these facts, this court must decide whether any claim of lien interest is barred by § 362(a)(4), or whether plaintiff is the holder of a valid lien interest by reason of § 362(b)(3) and § 546(b)(1)(A).

The statutes here pertinent are:

### § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entitles, of—

\* \* \* \* \* \*

(4) any act to create, perfect, or enforce any lien against property of the estate;

\* \* \* \* \* \*

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

\* \* \* \* \* \*

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under. section 547(e)(2)(A) of this title;

\* \* \* \* \* \*

### § 546. Limitations on avoiding powers

(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection;

\* \* \* \* \* \*

To succeed here, plaintiff must show that it had an "interest in property" of which nonbankruptcy law would permit perfection "effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A).

In the matter at hand, the "entity" in question would be the debtor-in-possession, which became the proprietor of the property upon the filing of the bankruptcy case, which was before the date of perfection. Thus, a limitation is imposed upon the rights of a trustee, or debtor-in-possession, in asserting his avoiding powers under the strong-arm section, § 544, or in connection with statutory liens under § 545, or in pursuit of avoidable post-petition transactions under § 549. In each of these instances, if perfection of an interest acquired before the date of perfection is permissible pursuant to state law even though post-petition, then the holder of the interest will prevail over the trustee or debtor-in-possession. While § 546(b)(1) does not specify that the interest in question must be obtained pre-petition, in the case at hand, that must be the case. This is so because here, the "entity that acquires rights in … property before the date of perfection" is the debtor-in-possession, and only on the date of the filing of

the bankruptcy did there come into being a debtor-in-possession.

The very question presented has been considered by two Courts of Appeal, and they have reached opposite conclusions. After careful consideration, we have reached the conclusion that the court in *Makoroff v. City of Lockport*, 916 F.2d 890 (3rd Cir.1990), is the more convincing. In *Makoroff*, the Economic Development Administration of the United States and the Farmers' Home Administration, both represented by the United States, held recorded mortgages on real property in the city of Lockport, County of Niagra, in the state of New York. The city and county asserted that they held tax liens on the subject real property for unpaid city, school and county taxes, by reason of which they stood ahead of the U.S. agencies in rights to proceeds from the sale of the subject real estate. The Court of Appeals affirmed the decisions below that the city and county tax liens were void because they had been created in violation of the automatic stay, 11 U.S.C. § 362(a)(4). The U.S. agencies prevailed in the litigation.

The court first discussed § 362(a)(4) and § 362(b)(3) and the implications of the reference to § 546(b) therein. In the course of that discussion, the court said:

> The paradigm section 546(b) case would arise in a state which has adopted the Uniform Commercial Code ("U.C.C."). Under various sections of the U.C.C., a perfected security interest relates back to either the filing of a financing statement or the date that the security interest attaches. See, e.g., H.R.Rep. No. 595, 95th Cong., 1st Sess. 371–72 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6327–28; S.Rep. No. 989, 95th Cong., 2d Sess. 86–87 (1978); reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5872–73.[1] Where a state law allows a creditor to perfect his security interest *within a certain period* of time after the security interest attaches, section 546(b) allows the creditor to complete the steps required under the state law for perfection. Without section 546(b), a creditor could not perfect his security interest without violating the automatic stay, even if all that remained was a ministerial act.

The purpose of this exception to the rule of the automatic stay is to "protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects" by allowing them to perfect an interest they obtained before the bankruptcy proceedings began. H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6327; S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5872; *see also Parr Meadows*, 880 F.2d at 1546.

---

1. [Footnote 1 in decision at p. 892.]

Under U.C.C. § 9–301(2), for example, a secured creditor may perfect a purchase-money security interest within ten days after the debtor has come into possession of the collateral, even if the creditor has not previously filed a financing statement. Once the secured creditor's interest is perfected by filing, his priority relates back to the date when his security interest attached, provided that filing occurs within ten days of attachment. Accordingly, the purchase-money security interest thus perfected will defeat a non-purchase-money security interest that was perfected after the debtor took possession of the purchase-money collateral (assuming that the non-purchase-money security interest does not itself relate back to a time before the debtor took possession of the purchase-money collateral).

Under section 546(b), perfection of a purchase-money security interest under U.C.C. § 9–301(2) would defeat a hypothetical judicial lien creditor on the date of the petition in bankruptcy. In other words, the automatic stay under section 362(b)(3) does not forbid the creditor from taking steps to perfect a purchase-money security interest after the petition is filed. Such a perfection of a lien is not considered the creation of a lien under the U.C.C.H.R. Rep. No. 595, 95th Cong., 1st Sess. 371–72 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6327–28; S.Rep. No. 989, 95th Cong., 2d Sess. 86–87 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5872–73.

*Makoroff,* 916 F.2d at 892. We think this excerpt of significance for its insight into a proper interpretation of the word "interest" in § 546(b)(1)(A).

In the course of its decision, the *Makoroff* court dealt with two arguments advanced by the city. The court rejected the first argument, that the city held the requisite "interest" by reason of an ever-present interest in all property within its jurisdiction, a position which had been adopted by the Fourth Circuit in *Maryland Nat'l Bank v. Mayor of Baltimore,* 723 F.2d 1138 (4th Cir.1983). In rejecting this, the *Makoroff* court said:

> Although the City and County may have an ever-present expectation of collecting taxes on all property within their jurisdiction, they do not have a property interest in a particular piece of real estate until they take the affirmative acts necessary to fix the amount of the tax due and to acquire a lien to the extent of that amount. For instance, city taxes do not become a lien until notice of a tax assessment has been published.

(citation omitted). *Makoroff,* 916 F.2d at 894.

The court in *Makoroff* then dealt with the second position of the city and county. A taxable status date is mandated by New York state law. In *Makoroff,* the pertinent taxable status date was prior to the date of the bankruptcy filing, and it was that date that the city and county asserted gave them the "interest" required by § 546(b)(1)(A). The city and county then said that they perfected their interest into a lien subsequent to the date of bankruptcy.

The court rejected this position after reviewing various New York authorities, saying:

> We believe that the tax status date is an arbitrary date chosen solely for ease in tax administration. Immediately following that date, the taxing entity still possessed no more than an expectation that taxes will be collected with respect to a particular property. . . . Calling such an

expectation an "interest in property" before the amount of the tax is established and a perfectible lien created, stretches the scope of that phrase far beyond its commonly understood meaning. Rather we conclude that the City or County acquires an "interest in property" only when it has performed the statutory acts necessary to give rise to a perfectible lien. Here, each of those acts was performed after Guterl filed its petition in bankruptcy. Accordingly, neither the City nor the County falls within the section 546(b) exception to the automatic stay.

*Makoroff,* 916 F.2d at 895–96.

The very same question presented to the *Makoroff* court is that which is before us here and we reach the same conclusion. We hold that the determination of taxable status creates no such interest, as is required by § 546(b)(1)(A), about which it could properly be said that subsequent acts perfected the interest into a lien. Rather the lien is created when the pertinent statute says that the tax becomes a lien. In the present case, the charter of plaintiff White Plains provides that real estate taxes do not become a lien until due and payable, in the present instance one-half on July 19, 1990 and one-half on January 2, 1991. Conceptually, there is no prior interest such as a security agreement or mortgage which can be perfected into a lien. The lien here is a creature of statute and is not the result of perfection. Plaintiff's lien having been obtained in contravention of § 362(a)(4), it is void.

In reaching this conclusion, we are not unmindful of *Lincoln Sav. Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Association, Inc.),* 880 F.2d 1540 (2nd Cir.1989). Indeed, the *Makoroff* court was fully cognizant of *Parr Meadows* and declined to follow it. (There was a dissent in *Makoroff,* but that was based solely upon a belief that the Third Circuit should defer to the Second because New York is within the Second Circuit.) In *Parr Meadows,* the crux of the decision for present purposes is the statement that

the actions necessary before a lien arises under New York law, represent merely a "completion of the taxation process and the perfection of the county's interest in the property." This court cannot find this to be a valid proposition. *Parr Meadows,* 880 F.2d at 1547. The charter here, and similar provisions in other taxing authorities in New York, state when a lien arises. Only if one does not give words their plain meaning can it be said that there was something which later became a lien. In no way is it possible to see in the analysis of a taxable assessment date something akin to a security interest or mortgage which can be perfected by recording. Moreover, we subscribe to the rationale of both the *Makoroff* court and the court in *Watervliet Paper Co., Inc. v. City of Watervliet (In re Shoreham Paper Co.),* 117 B.R. 274, 282 (Bankr.W.D.Mich.1990), that there is nothing in the New York law which says or can be construed to say that the lien relates back to a date earlier than the date the taxes become due and payable.

The motion of defendant for summary judgment is granted and that of plaintiff denied. The complaint will be dismissed.