### In re MERRY–GO–ROUND ENTERPRISES, INC., MGR Distribution Corporation, MGRR, Inc., Debtors.

Bankruptcy Nos. 94–5–0161–SD to 94–5–0163–SD.

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

Dec. 3, 1998.

---

Brooke Schumm, III, Daneker, McIntire, Davis, Schumm, Prince & Goldstein, P.C., Baltimore, MD, for Oakland County.

Deborah Hunt Devan, Neuberger, Quinn, Gielen, Rubin & Gibber, Baltimore, MD, Chapter 7 Trustee.

Karen H. Moore, Asst. U.S. Trustee, Office of U.S. Trustee, Baltimore, MD, for U.S. Trustee.

Joel I. Sher, Shapiro & Olander, Baltimore, MD, for trustee.

### MEMORANDUM OPINION SUSTAINING TRUSTEE'S OBJECTION TO OAKLAND COUNTY'S PROOF OF CLAIM AS TO SECURED STATUS FOR POSTPETITION TAXES, AND ALLOWING AD VALOREM PERSONAL PROPERTY TAXES AS A CHAPTER 11 ADMINISTRATIVE CLAIM

E. STEPHEN DERBY, Bankruptcy Judge.

## I. ISSUES.

Before the court is the Chapter 7 Trustee's objection to the postpetition, preconversion

secured claim of Oakland County, Michigan. The two questions submitted for resolution are: first, whether this court has jurisdiction to hear the Trustee's objection to the status of the county's claim for postpetition personal property taxes; and, second, whether a lien for an *ad valorem* tax assessed on personal property in Michigan may attach postpetition when the debtor's case commenced prior to the effective date of 11 U.S.C. § 362(b)(18).

## II. FACTS.

Merry–Go–Round Enterprises, Inc., and certain of its affiliates (the "Debtor") filed a petition to reorganize under Chapter 11 of the Bankruptcy Code on January 11, 1994. The reorganization effort was unsuccessful, however, and this court converted the case to Chapter 7 on March 1, 1996. Prior to the conversion, on February 22, 1996 this court approved a going out of business (GOB) sale of Debtor's inventory. Under the terms of the order approving the GOB sale, whatever liens had attached to the items being sold would continue as liens on the proceeds from the sale.

Oakland County claims that its liens for postpetition Chapter 11 personal property taxes had attached to items sold at the GOB sale and continued in the GOB sale proceeds.

Personal property taxes were assessed on December 31, 1993, 1994, and 1995 in the amounts of $18,922.62, $189.76 and $14,536.40, respectively. The parties stipulated that the amount of Debtor's inventory in Michigan on the petition date exceeded the amount of Oakland County's claim. The parties also stipulated that the amount of inventory on February 29, 1996, the date of the GOB sale, and the amount of the GOB sale proceeds as of March 1, 1996, the date the case was converted, exceed the claim of Oakland County. Therefore, if Oakland County's statutory lien attached, its claim is fully secured.

At the hearing the parties agreed to continue the objection as to the prepetition component of the claim, i.e. the taxes assessed as of December 31, 1993. The Trustee represented that prepetition secured claims would be paid to the extent that collateral existed and was liquidated in the GOB sale, if the proceeds are traceable.

The basis of Trustee's objection to the December 31, 1994 and December 31, 1995 claims is that the automatic stay of 11 U.S.C. § 362(a)(4) prevented the perfection of Oakland County's personal property tax liens postpetition. Oakland County contends that its liens attached by operation of law and that perfection of its liens was not stayed by the filing of the bankruptcy petition. It also asserts that this court is without jurisdiction to decide the matter.

## III. DISCUSSION AND CONCLUSIONS.

### A. *Jurisdiction*

The challenge to the court's jurisdiction must be addressed first. Oakland County argues that under *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), this court is without jurisdiction to decide the status of its claim. It urges that the county did not consent to be sued in this court, and that it is protected by the Eleventh Amendment, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign State.

U.S. Const.Amend. XI (January 8, 1798).

There is nothing in this record to establish that Oakland County has standing to raise the issue of sovereign immunity. The Eleventh Amendment's protection of a State's sovereign immunity does not generally extend to a State's subdivisions. *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 786 (4th Cir.1997). In *Antonelli*, the Fourth Circuit stated:

> It has long been the law that the Eleventh Amendment does not bar suits in federal court against political subdivisions of the state.... *cf. Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 123, 104 S.Ct. 900, 920, 79 L.Ed.2d 67 (1984) (allowing Eleventh Amendment immunity for

state and county officials where relief "substantially concerns ... an arm of the State," the state funded the county program almost entirely, and state cooperation was essential to the county program). *Antonelli*, 123 F.3d at 786. Similarly, the U.S. Supreme Court has found that unless a political subdivision of a State is the arm or alter ego of a State, it is a citizen for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1800, 36 L.Ed.2d 596 (1973). On this record the court concludes, therefore, that Oakland County, as a subdivision of the State, does not have standing to assert the State of Michigan's Eleventh Amendment's sovereign immunity.

The issue of whether Oakland County may assert the State of Michigan's Eleventh Amendment right of sovereign immunity, however, was not raised at the hearing, nor was it addressed in memoranda submitted by the parties. Further, the court recognizes that sovereign immunity is a jurisdictional issue that may be raised at any time, even for the first time on appeal. *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140, 1143–44 (4th Cir.1997). Consequently, the court will consider the jurisdictional issue on the merits, as if Oakland County is authorized to invoke Michigan's sovereign immunity.

The procedural context of the instant dispute is not in the form of a suit in law or equity; rather, it is an objection to claim, which is a contested matter. Fed.R.Bankr.P. 3007, 9014. Oakland County argues, however, that because the Trustee seeks to avoid or subordinate it's lien, the Trustee has made a demand for relief of the kind specified in Fed.R.Bankr.P. 7001(2) and (8). Consequently, the County urges that the objection "becomes an adversary proceeding." *Id.* at R. 3007.

■ Oakland County argues that the Trustee's objection amounts to a proscribed suit in law or equity because some affirmative step, i.e. an adversary proceeding, must be taken to avoid or modify a security interest in property, citing *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 92 (4th Cir.1995). In

*Cen–Pen*, a debtor's confirmed chapter 13 plan attempted to void the liens of a secured creditor. The U.S. Court of Appeals for the Fourth Circuit stated that "the general rule [is] that liens pass through bankruptcy unaffected." *Id.* The court continued that "[u]nless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation." *Id.* The instant matter is distinguishable from *Cen–Pen* because the Trustee has objected to the secured status asserted by Oakland County in its proof of claim; she has not sought to avoid an acknowledged lien. Her objection is limited to an otherwise allowed secured claim in this case.

Further, Trustee's objection does not include either a prayer or counterclaim for the avoidance of a lien or a request for subordination of an allowed claim. Rather, the existence of a lien is at issue. Because the Trustee's objection does not request relief specified in Fed.R.Bankr.P. 7001(2) or (8), this dispute is a contested matter. *See In re Therneau*, 214 B.R. 782, 785 (Bankr. E.D.N.C.1997); Fed.R.Bankr.P. 3007 Advisory Committee Note (1983) (objections to claims are contested matters, unless a counterclaim is joined with the objection). *Cf.*, 10 Collier on Bankr. ¶ 7.001.03[1] (15th ed. 1997) ("The validity of a lien may be determined in contexts other than adversary proceedings.").

The Supreme Court in *Seminole Tribe* stated: "notwithstanding Congress' clear intent to abrogate the States' sovereign immunity, the Indian Commerce Clause does not grant Congress that power, and therefore [the statute at issue] cannot grant jurisdiction over a State that does not consent to be sued." 116 S.Ct. at 1119. Chief Justice Rehnquist, who delivered the Court's opinion, wrote: "Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States." *Id.* at 1131–32. The *Seminole Tribe* decision "reconfirm[ed] that the background principle of state sovereign immunity embodied in the Eleventh Amend-

ment is not so ephemeral as to dissipate when the subject of the suit is an area ... that is under the exclusive control of the Federal Government." *Id.* at 1131.

Applying *Seminole Tribe,* the Fourth Circuit in *Creative Goldsmiths* held that § 106(a), which purported to abrogate states' Eleventh Amendment Immunity, was unconstitutional. *See Creative Goldsmiths,* 119 F.3d at 1147. Specifically, the court found: "Because the holding in *Seminole* extended to restrict all federal jurisdiction over the states based on Article I powers, we hold in this case that Congress has no authority under the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, to abrogate state sovereign immunity in federal courts." *Id.* at 1145.

The question before this court, however, is not that which was at issue in *Creative Goldsmiths.* Rather, the question before the court concerns the extent to which Oakland County has waived its sovereign immunity. In determining whether the State of Maryland waived its sovereign immunity, the Fourth Circuit has said that the Eleventh Amendment "presents no bar to a state affirmatively entering a federal forum voluntarily to pursue its own interest." *Creative Goldsmiths,* at 1148. The Fourth Circuit went on to find "that to the extent a defendant's assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a compulsory counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim in order to avail itself of the federal forum." *Id.*

The U.S. Supreme Court described the circumstances when a court can find a State has waived its immunity and Eleventh Amendment protections in *Atascadero State Hosp. v. Scanlon,* where the Court stated:

A State will be deemed to have waived its immunity "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974), quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).

*Atascadero,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171, 178 (1985).

In *Creative Goldsmiths,* the Fourth Circuit took the principles set forth by the Supreme Court and went through a two step analysis to determine whether the State of Maryland had waived its immunity from suit by filing a proof of claim. The first step was to look to state law to determine whether the state had authorized a waiver of its Eleventh Amendment immunity, or if a state voluntarily initiated an action in federal court, whether the state officer is authorized to proceed. *Creative Goldsmiths,* 119 F.3d at 1148. The second step was to look "to federal law to determine whether the state's filing of a proof of claim or other participation in the bankruptcy court on the merits effected a waiver of immunity...." *Id.* at 1149. The Fourth Circuit found that in Maryland legislative authorization was needed in order to waive immunity. *See id.* at 1149. Although the court found that immunity had not been waived, it did note that because of the context of the case the decision did not "reach any defenses that the trustee may have to the state's proof of claim ..." arising out of the same transaction or occurrence, such as a claim in the nature of a compulsory counterclaim. *Id.*

The instant case involves the circumstances that were not reached by the *Creative Goldsmiths* decision. By filing a proof of claim, Oakland County elected to participate in the administration of Debtor's estate. It has not asserted that its proof of claim was filed without the appropriate authorization. By filing a proof of claim Oakland County effectuated a limited waiver of its immunity. Its proof of claim is subject to challenge by a party in interest. *See* 11 U.S.C. § 502(a). Resolution of an objection to the allowance of a claim is a core proceeding to be heard by a bankruptcy judge. *See* 28 U.S.C. § 157(b)(2)(B).

Oakland County may not invoke sovereign immunity to protect itself from the Trustee's challenge to the basis of its secured claim. Section 502(a) does not distinguish proofs of claim filed by governmental units from other creditors' proofs of claim. As a creditor seeking to participate in the assets of the

**780**

estate, Oakland County's participation is a consequence of this court's jurisdiction over the estate. This court's power to determine the amount and status of Oakland County's claim does not arise from the court's jurisdiction over Oakland County, but instead from jurisdiction over Debtor and its estate. *Cf. Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 787 (4th Cir.1997) (holding that sovereign immunity did not bar enforcement of bankruptcy court's order confirming Chapter 11 plan against state and counties where state desires to participate in the assets of the estate and *citing Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251, 1255 (4th Cir.1997) and *New York v. Irving Trust Co.*, 288 U.S. 329, 333, 53 S.Ct. 389, 391, 77 L.Ed. 815 (1933)).

The Trustee's objection raises the issue whether the automatic stay of 11 U.S.C. § 362(a) was effective to prevent a statutory tax lien from attaching post-petition. In *Maryland v. Antonelli Creditors' Liquidating Trust*, the court observed that the automatic stay under § 362, like § 1146(c) which was at issue in *Antonelli*, is effective against states by itself as a legislative enactment, without the exercise of federal judicial power. The court explained:

> They [the state and the counties] are so bound neither solely nor primarily because the bankruptcy court entered an order incorporating the tax exemption provision [of § 1146(c) ], but because the federal government has power under the Bankruptcy Clause of the Constitution, art. I, § 8, cl. 4, to enact such a provision, and any bankruptcy provision enacted within constitutional authority applies directly to a bankruptcy estate and takes precedence over conflicting state provisions by reason of the Supremacy Clause, U.S. Const., art. VI, § 2. The provision for tax exemption at issue here operates against the states in a fashion similar to, for example, the automatic stay provision, 11 U.S.C. § 362. The force of such legislative enactments is not derived from a court order or prior adjudication, but from the legislative enactments themselves. Thus, to the extent that the bankruptcy court's order reflects an accurate interpretation of 11 U.S.C. § 1146(c),

the order is mere surplusage and imposed no new burden on the Taxing Authorities. 123 F.3d at 781.

▮▮▮▮ Therefore, for the following alternative reasons, this court has jurisdiction to hear the Trustee's objection and to determine the amount and secured status of Oakland County's claim. As a political subdivision of the State of Michigan, Oakland County is not presumptively protected by the Eleventh Amendment to the U.S. Constitution. Even if it is protected by the Eleventh Amendment, the present dispute is not a suit in law or equity. Rather, it is a contested matter initiated after Oakland County voluntarily filed a proof of claim with the court. Regardless of the procedural context of the dispute, Oakland County effected a limited waiver of its immunity by filing its proof of claim in an effort to participate in the assets of the estate over which this court has jurisdiction. Lastly, because § 362(a) is effective against Oakland County without the exercise of federal judicial power, an order by this court interpreting that section does not offend the Eleventh Amendment.

### B. *Status of the Claim*

The substantive legal question presented is whether a lien for an *ad valorem* tax assessed on personal property in Michigan may attach postpetition when the Debtor's case commenced prior to the effective date of 11 U.S.C. § 362(b)(18).

Michigan statutory law provides the mechanism by which Oakland County assesses and levies personal property taxes. The pertinent part of the statute to which Oakland County has directed the court's attention reads:

> ... All personal taxes levied or assessed for state, county, village, or township taxes are also a first lien, prior, superior, and paramount, on all personal property of the persons assessed on December 1, on a day provided for by the charter of a city or village, or on the day provided for in section 40a. The lien for those amounts, and for all interest and charges on those amounts, shall continue until paid. The tax liens take precedence over all other

claims, encumbrances, and liens on that personal property, whether created by chattel mortgage, title retaining contract, execution, any final process of a court, attachment, replevin, judgment, or otherwise. A transfer of personal property assessed for taxes does not divest or destroy the lien, except where the personal property is actually sold in the regular course of retail trade....

Mich.Comp.Laws § 211.40 (1998) (Mich.Stat. Ann. § 7.81). December 1 of each year is lien day in Michigan. *See* Mich.Comp.Laws § 211.40 (1998). Lien day is the day on which a first lien arises on all personal property of a taxpayer to secure payment of the taxpayer's personal property taxes that were assessed on the preceding December 31, which is known as tax day. *See* Mich.Comp. Laws §§ 211.40 (5th sentence) (providing that the lien day for personal property taxes that have been "levied or assessed" is December 1 unless another date is provided for by a city or village charter or by 211.40(a), which requires the local treasurer to take affirmative action which is not alleged to have been taken here), 211.40 (1st sentence) (providing that personal property taxes become a debt due on "tax day"), 211.2 (defining "tax day" as "December 31 of the immediately preceding year"); *see also Manistee Co. v. Reef Petroleum Corp. (In re Reef Petroleum Corp.),* 92 B.R. 741, 745 (Bankr. W.D.Mich.1988) (discussing the mechanics of Michigan personal property tax law).

 There were amendments to Mich. Comp.Laws § 211.40 during the years at issue, but the statutory language applicable to personal property tax liens before each amendment does not appear to have differed materially from the current version. *See* Mich.P.A.1994, No. 80, § 1. Imd. Eff. April 11, 1994; Mich.P.A.1994, No. 279, § 1, Imd. Eff. July 11, 1994; Mich.P.A.1995, No. 143, § 1, Eff. Oct. 9, 1995. Oakland County has stated in its memoranda that the tax lien is effective on tax day and that from tax day forward the amount due for personal property taxes is a lien on the personal property of the taxpayer until paid. However, Oakland County has not provided authority for this modification of the general statutory scheme,

and the court does not accept Oakland County's assertion in this regard.

Oakland County's position also is inconsistent with the structure of the statute. Section 211.40 states:

... All personal taxes levied or assessed ... are also a first lien ... on all personal property of the persons assessed on December 1, on a day provided for by the charter of a city ..., or on the day provided for in section 40a.

Oakland County is not a city or village. Section 40a is found at Mich.Comp.Laws § 211.40a, which states:

(1) The treasurer of a county ... may designate the tax day provided in [§ 211.2] as the date on which real or personal property taxes become a lien on the real or personal property assessed by filing an affidavit in the office of the register of deeds ... attesting that 1 or more of the following events have occurred:

(a) The owner or person otherwise assessed has filed a bankruptcy petition under the federal bankruptcy code....

The court understands § 211.40a as stating that the treasurer may, upon the filing of a proper affidavit that one of the specified events has occurred, cause lien day to occur on tax day. If no affidavit is filed, however, lien day remains that which is provided by § 211.40, namely, December 1 of the year following the tax day. *See* § 211.40. Oakland County has not suggested that it filed such an affidavit or that one of the listed events occurred, except the bankruptcy filing. If Oakland County were correct in interpreting § 211.40 as providing that personal property taxes become a lien on December 1 of the year in which they were assessed, then § 211.40a would serve no purpose.

The Trustee argues that, because the Chapter 11 petition was filed in January, 1994, the automatic stay in 11 U.S.C. § 362(a)(4) prevented Oakland County from acquiring a statutory lien that arose postpetition for unpaid property taxes. Section 362, as applicable to this case, provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an applica-

tion filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. § 78eee(a)(3)), operates as a stay applicable to all entities, of—

. . .

(4) any act to create, perfect, or enforce any lien against property of the estate;

11 U.S.C. § 362(a) (1994) (current version at 11 U.S.C. § 362 (Supp.1998)).

■ The Bankruptcy Reform Act of 1994 added a provision to 11 U.S.C. § 362(b) that provides the automatic stay does not apply to the creation or perfection of a statutory lien for *ad valorem* property taxes imposed by a political subdivision of a State. *See* 11 U.S.C. § 362(b)(18) (Supp.1998); Pub.L. No. 103–394, § 401, 108 Stat. 4106, 4146 (1994). However, this amendment became effective only for cases commenced after October 22, 1994, and it is therefore not applicable to the instant objection. *See* Pub.L. No. 103–394, § 702(a), 108 Stat. 4106; 4150 (1994).

■ Oakland County argues that despite the automatic stay, case law supports its contention that its lien arose and attached postpetition. Specifically, Oakland County relies on *Cambron Tool Co. v. Manufacturers Bank of Detroit (In re Cambron Corp.)*, 27 B.R. 723 (Bankr.E.D.Mich.1983) and *Maryland National Bank v. Mayor and City Council of Baltimore (In re Maryland Glass)*, 723 F.2d 1138 (4th Cir.1983). The court will address each case in turn.

In *Cambron*, the debtor in possession and creditors' committee sought to avoid a personal property tax lien held by the City of Bay City, Michigan pursuant to 11 U.S.C. § 545(2). In order for the trustee to avoid a lien, it must not be perfected or enforceable against a bona fide purchaser at the commencement of the bankruptcy case. *See* 11 U.S.C. § 545(2). Under Michigan law as discussed previously, for personal property taxes that are assessed on December 31 in any given year, a lien arises on the taxpayer's personal property on December 1 of the following year (the lien day) and continues until the taxes are paid. No further process of law or court proceeding is required to complete the fixing of the lien on the lien day.

*In re Ever Krisp Food Products Co.*, 307 Mich. 182, 212, 11 N.W.2d 852, 862 (1943).

The court in *Cambron* held that because the lien was already perfected and enforceable against a bona fide purchaser on the petition date, the lien could not be avoided. *Cambron*, 27 B.R. at 725–27. While the *Cambron* decision is helpful in understanding the mechanics of tax liens in Michigan, the result is inapposite. The tax liens at issue in *Cambron* arose prepetition and were for taxes assessed and due prepetition. The Trustee's objection challenges only liens arising postpetition.

In *Maryland National Bank v. Mayor and City Council of Baltimore (In re Maryland Glass)*, 723 F.2d 1138 (4th Cir.1983), the trustee initiated an adversary proceeding to determine the rights of Baltimore City and a bank that held a security interest in the debtor's real property. The trustee challenged Baltimore City's asserted tax lien for postpetition real property taxes under 11 U.S.C. § 545(2). The Fourth Circuit observed that under 11 U.S.C. § 546(b), a trustee's avoidance powers " 'are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection.' " *Maryland Glass*, 723 F.2d at 1141 (*quoting* 11 U.S.C. § 546(b) (1983)).

Under Maryland law, the State has an ever present interest in real property. The Fourth Circuit described that interest as:

[T]he right to require first application of the proceeds from the sale of the property, to taxes due and payable by the time of distribution, a right that is immediately perfected, if not enforceable until the sale actually occurs, at the very moment an interest in real estate—such as the Bank's mortgage, or a bona fide purchaser's fee simple holding—arises. The interest, by force of the generally applicable law of Maryland, is ever-present. . . .

*Maryland Glass*, 723 F.2d at 1142. Because the State had a long standing interest in the real property at issue, the Fourth Circuit held that the imposition of the tax lien was only the last step in perfecting the State's interest and that no entity could prevent the

imposition of the lien. *See Id.* at 1143. Therefore, as to real property the automatic stay did not prevent the lien from being perfected or enforceable against a bona fide purchaser.

The *Maryland Glass* decision did not extend to personal property, where recordation is a prerequisite for the creation of a tax lien in Maryland. *See Id.* at 1144. In *dicta,* the Fourth Circuit stated:

> Because there is no assurance that the taxing authorities will, indeed, have the power to tax a given item of personal property in any given year, it is difficult to maintain the proposition that the City or State possessed a pre-existing interest in the property that only remained to be perfected after the petition in bankruptcy was filed.

*Id.* at 1144 n. 14.

Subsequent to *Maryland Glass,* this court noted that because *Maryland Glass* has not been extended to personal property taxes, the secured status of postpetition personal property taxes is less clear that the secured status of real property taxes. *In re Sylvia Development Corp.,* 178 B.R. 96, 97 n. 3 (Bankr.D.Md.1995) (Keir, J.). In deciding that Calvert County's application for payment of real property taxes as an administrative expense must be disallowed because of the county's secured status, this court noted the disparate treatment of real and personal property taxes prior to the enactment of 11 U.S.C. § 362(b)(18). *Id.*

Oakland County argues that *Maryland Glass* supports its position because Michigan law differs from Maryland law in that personal property taxes in Michigan are valid against bona fide purchasers. *See Ever Krisp,* 307 Mich. at 199–200, 11 N.W.2d at 857. In *Ever Krisp,* the Supreme Court of Michigan stated:

> In this State the personal tax is a specific and perfected lien against all personal property of the persons assessed, without regard to whether or not it continues in the hands of the tax debtor. The property may be distrained although found in the hands of a subsequent bona fide purchaser. Such a purchaser, although in good faith, takes the property subject to the tax lien.

*Id.* However, the Supreme Court of Michigan distinguished between fixed, perfected tax liens on personal property that arose before the property was turned over to a receiver, and those taxes which did not become a lien until after the receiver took the property. *Id.,* 307 Mich. at 211–12, 11 N.W.2d at 862. In *Ever Krisp,* the receiver did not take the property burdened with the post-transfer tax lien. *Id.*

The inference the court draws from this distinction is that the State of Michigan has no preexisting interest in the personal property. Instead, Michigan's interest is created when taxes become due and a lien attaches. Support for this inference is found in the case of *Watervliet Paper Co., Inc. v. City of Watervliet (In re Shoreham Paper Co.),* 117 B.R. 274 (Bankr.W.D.Mich.1990).

In *Shoreham Paper,* a debtor in possession filed a complaint to determine whether the creation of a tax lien on real property violated the automatic stay. Lien day was subsequent to the petition date, although tax day was prior. The court held that 11 U.S.C. § 362(a)(4) prevented the creation and perfection of a tax lien for the year the petition was filed. *Id.* at 283. The *Shoreham Paper* decision did not find *Maryland Glass* dispositive. *Id.* at 279. Instead, the court stated that:

> the Michigan statute and the interpretive case law recognize that the real property tax lien arises and is perfected on the same day, which in the instant case was after the filing of [the] involuntary petition. And further that the lien does not relate back to an earlier date. Thus, an element essential to application of [§ ]546(b) does not exist.

*Id.* at 281. In other words, the State of Michigan does not possess a pre-existing interest in real property.

Further, the issue of whether a tax lien arises from an assessment on personal property in the hands of a debtor on tax day, when that personal property is property of a bankruptcy estate on lien day, was considered in *Robbins v. National Acceptance Co. of America (In the Matter of Grand Rapids Packaging Corp.),* 54 B.R. 282 (Bankr.

784

W.D.Mich.1985). Concluding that the personal property was not subject to a personal property tax lien, the court stated:

> If a petition for protection under the Bankruptcy Code has been filed in the interim between the assessment day and the lien day, then the estate created thereby will take the debtor's property free of any personal property tax lien that was not vested, specific and perfected as of the commencement of the bankruptcy case.

*Id.* at 286.

From these cases, it is appears that Michigan law on personal property tax liens is not different in pertinent respects from Maryland law. Michigan does not possess some pre-existing interest in personal property such that a tax lien is created despite 11 U.S.C. § 362(a)(4). The automatic stay, as it existed at the time the instant case was commenced in January, 1994, prohibited the creation and perfection of tax liens arising from the *ad valorem* taxes assessed on December 31, 1993, and subsequent years. Therefore, Oakland County is not entitled to assert secured status for taxes assessed on December 31, 1994, and beyond.

Although the parties did not proceed at the hearing on the taxes assessed December 31, 1993, the court's decision reaches the secured status of Oakland County's entire claim. For the reasons stated above, it appears the December 31, 1993 taxes are also unsecured. The court does not, however, make a final determination as to the allowed amount and status of the prepetition component of the claim because the parties withdrew that issue at the hearing.

As for the taxes assessed December 31, 1994 and 1995, they are unsecured. Because these taxes were "incurred by the estate" and are not a tax specified in 11 U.S.C. § 507(a)(8), they are entitled to treatment as a Chapter 11 administrative claim pursuant to 11 U.S.C. § 503(b)(1)(B)(i).

## IV. CONCLUSION.

For the reasons stated above, a separate order will be entered that sustains Trustee's objection to the secured status of the proof of claim filed by Oakland County, and allows Oakland County's claim for taxes assessed December 31, 1994 and 1995 as a Chapter 11 administrative expense.